Welch, J.
This case has been twice elaborately argued, and we have devoted to its consideration much time and labor, but have been unable all to unite in any opinion disposing of the case. A majority of the members of the court, however, concur in holding that the court below erred in its charge to the jury touching the defendants’ obligation to repair the sewer, and that the verdict of the jury, based as it must have been upon that charge, is contrary to the law and the evidence. The other questions raised and argued by counsel we leave untouched. I refer to the questions whether the sewer has been dedicated to the city, so that the city has become liable; whether the defendants, as between them: and parties who do not hold under the builders of the sewer, are liable for failure to make repairs; and whether' the defendants discharged themselves from liability by parting with their title a short time before the happening of the injury. What we decide is, that the defendants, as between them and others who hold under the original proprietors, are under no obligation *646 to repair that portion of the sewer lying within their premises.
There is no evidence tending to show that the defendants did any act, or in the management of their premises wore guilty of any omission, which caused the breach complained of. To abstain from such acts and omissions, we think, under the peculiar circumstances of the case, was the only duty which the law imposed upon the defendants, as between themselves and the other proprietors.
Previous to the erection of this sewer, its builders had the right to the uninterrupted flow of the natural stream, and they were under no obligation in respect to it, except to abstain from acts by which it should be obstructed. They were not bound to repair. Their duty was a duty of omission merely. By common agreement they substituted a sewer for the channel of the stream, in such form as utterly excludes the idea, if not the possibility, of restoring the stream to its natural channel. By this act they extinguished their right to the flow of the water as a natural stream. Whatever rights and duties devolve upon them, inter se, in relation to the new and substituted structure, must'have their origin and foundation in the agreement, express or implied, under which it is made. The obligation to repair, in such cases, is an implication of law arising from the nature and uses of the structure. The duty to repair is implied, because it is reasonable, and therefore supposed to be within the original intention of the parties. There is no inflexible rule of law imposing this duty, as between the several proprieters or builders of such a structure. I admit the general rule, but it is a general rule simply because this method of keeping up repairs is generally the most reasonable, convenient, and equitable method of maintaining the structure. When this reason ceases, the rule ceases. When the nature and uses of the structure are such that it would be unreasonable, inconvenient, and inequitable, there seems to be no foundation for the rule. Such we understand to be the case here. This work was simply the carrying out of a scheme, concurred in by *647 all, for the improvement of the city. It was a unit, every part of it dependent upon every other part, so that no part of it could be omitted or removed without marring or destroying the whole. It was, moreover, intended to be permanent. The thirty to fifty feet of earth placed over the sewer was put there to remain. The sewer was intended to be buried out of sight and out of reach, and to be superseded, when the growth of the city should require it, by a better one. The grand object was to fill up the valley, make it a suitable site for a city, and cover it with permamanent buildings. The sewer was a necessary fart of that work, and merely incidental and subsidiary to it. No one of the projectors would have thought for a moment of binding himself, or of asking his co-adjutors to be bound, after the work should have been completed, to remove the earth, and repair his separate section of the sewer. No such intention could have existed. No one would have been willing to take upon himself such a burden, and no wise person would be willing to risk his interests upon the contingency that every proprietor would, at all times, keep up repairs. It is easy to suppose cases where such an agreement would be impossible of execution, and therefore could not be supposed to have been within the contemplation of the parties. Such would be the case where adjoining proprietors construct an arched sewer along the line between them. The work, from its very nature, becomes a unit — a common work — no matter which part, or how much of it, was actually built by either; for neither party could repair, or rebuild, without the cooperation of the other. Such, though not in so marked a degree, is the character of the structure here. Though built in parcels, as a mere mode of apportioning its cost, in its design and intended uses it is a unit; and it is unreasonable to suppose that its repair or reconstruction was not intended to be a matter of common interest and common burden. No proprietor can repair his section of the sewer without trespassing upon the grounds of his neighbors. The sections of the sewer next to the various street-crossings can not be repaired without destroying the streets. Who shall repair *648 that part of the sewer traversed by Culvert street ? Shall it be repaired by the city, or by the owners of the lots ? It is very plain that the original proprietors anticipated the building of an important part of the city upon these grounds, and the division of it into lots, which would grow smaller and smaller by successive subdivisions; thus indefinitely dividing up the responsibility of keeping in repair the common sewer, on which, to a great extent, the value of the property depended.
I suppose the intention of its builders was, not that the sewer should remain in its original condition forever, and be kept in that condition forever by the uncertain method claimed, but that it should serve a temporary purpose merely, in aid of a permanent work. They intended it to hold up the earth, and to serve the purposes of a sewer, until, by the increase of the volume of water cast upon it, or on account of its dilapidation, the city, or the lot-owners, by concert among themselves, should see proper to supersede it by a larger and more permanent sewer, near the surface of the earth, where it could be repaired without disturbing the foundations of the city, and at comparatively small expense. I think the sewer has long ago served the purpose intended. It ought, long before this injury happened, to have been superseded, and have become a thing of the past. It is not of sufficient capacity much longer to drain that part of the city, and it is folly, in my judgment, to insist upon maintaining it in its presents position, either by individual and sectional repairs or by concert of action. That part of the city eminently required such a sewer; and if the city has not long ago adopted it as a city sewer, it seems plain to me that she ought to have done so, or else she ought to have supei’seded it by a better one, adapted to the present necessities of the city. But if it be true that the city, as a municipality, has not adopted the sewer, so as to make itself liable, it by no means follows that the builders of the sewer have not dedicated it to the general public, and thereby, as between themselves at least, agreed to release each other from individual responsibility for repairs.
*649 While the sewer is being subjected to that user by the public which may in time ripen into an acceptance of the dedication, I can not see on what principle- of law it can be implied that there is an agreement between the owners that each shall continue to exercise his individual rights, and discharge his individual obligations. Such an agreement is inconsistent with the idea of a dedication. That it was intended to withdraw this work and structure from individual control, and make it -a thing of common or public interest, is evident from its very nature. If the builders did not intend, and therefore impliedly agree among themselves, to dedicate it to the general public or to the city, they at least intended to make it a thing of common interest and common obligation among themselves. They intended, absolutely and forever, to extinguish the natural stream, and to supersede it by a sewer which should be to each proprietor a gwasi-natural stream, subjecting him to no new obligations, such as were not incident to the natural stream.
Under such circumstances, a majority of us think that the court erred in holding, as we understand the court in its charge to have held, that the defendants were bound to make the repairs in question. It is true the court does not say in so many words that the defendants were bound to make these repairs, but the ehai’ge could have been understood in no other sense by the jury. In those parts of the charge where the court speaks of the defendant’s duty as being merely that of “ exercising reasonable and ordinary care ” in making repairs, the court must necessarily be understood as referring to the time and manner of making the repairs, and the knowledge of the defendants of their necessity. The burden of making the repairs is clearly and exclusively imposed by the court upon the defendants. The defect to be repaired was well defined ; it was a breach in the arch of the sewer. There was but one way of repairing it — namely, by removing forty feet perpendicular of earth from above it, and reconstructing or readjusting the stones of the arch; and the simple question was, who was bound to do that work ? The court plainly told the jury, in sub *650 stance, that the duty of doing the work devolved upon the defendants, and that they could only escape responsibility by making all necessary and “ reasonable ” efforts, and exercising due care,” in its performance. Their section of the sewer was “ a separate sewer; ” no one else was bound to repair it'; the whole duty of repairing it rested upon the defendants; and they were bound to discharge that duty in the same way as men of ordinary prudence discharge any other duty imposed upon them. .
This charge, we think, was contrary to the law of the case, and for this error the judgment must be reversed.

Judgment reversed.

Rex and Gilmore, JJ., concurred.